FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2018 APR -4  PM 1:47

CLERK _CAdams_
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GERGIA
\DUBLIN DIVISION

MARGIE McRAE )
)
Plaintiff, )
)
vs. )
)
ALICE RENEE WOOTEN LESTER, )   CASE NO. CV318- 025
INDIVIDUALLY AND AS HEIR OF )
AND AS PERONAL )
REPRESENTATIVE OF THE )
ESTATE OF JEROME WOOTEN, )
DECEASED, AND GERALDINE )
WOOTEN CRAY, NINA WOOTEN )
BRANTLEY, GLENDA WOOTEN, )
ALLEN CURTIS WOOTEN, BERNARD )
WOOTEN AND MARCUS WOOTEN, )
WOOTEN AND AS HEIRS AT )
LAW OF JEROME WOOTEN, )
DECEASED, )
)
Defendants. )

_COLLATERAL ATTACK_ ON TELFAIR COUNTY JUDGMENT FOR LACK OF
JURISDICTION, FOR DISPARATE TREATMENT

1.

Jurisdiction

Plaintiff is an African American female, domiciled in a sister state. Jurisdiction is based on Federal Question: Equal Protection Discrimination, Disparate treatment, violation of the Civil Rights statutes, RICO, xenophobia, and other causes of action. Diversity Jurisdiction may also be proved. State causes of action include, but are not limited to fraud, conspiracy, abusive litigation, intentional and negligent infliction of

1

emotional distress. Plaintiff will show criminal perjury and false swearing. Punitive damages are warranted.

## STATEMENT OF FACTS

1.

### The Telfair County Superior Court lacked authority to void judgment.

In 2011 plaintiff won a default judgment in the Telfair County Magistrate Court against defendant Bernard Wooten. Causes of action included theft, extortion and punitive damages. Erroneously, damages were awarded without a hearing. In 2014 plaintiff filed an enforcement action in Telfair County Superior Court 14 CV 080. The seven surviving Wooten sibling heirs to the Jerome Wooten Estate identified in the caption contested enforcement, claiming the Magistrate Court lacked jurisdiction because theft and extortion were criminal actions only, not civil. That Magistrate Court could not award punitive damages was irrelevant because the required writing was never submitted and there is no evidence that punitive damages were awarded. The Superior Court voided plaintiff's *fi fa* and *lis pendens*, refused her request to obtain her own survey of the Wooten lands holding that she was not a judgment creditor, and referred defendants' challenge (14 CV 173) back to Magistrate Court for reconsideration, where it was docketed as 15 409 CS. Magistrate Court summarily dismissed the challenge to its competence to know its jurisdiction in 2016. Since the Superior Court had deferred to the Magistrate Court when it transferred the case, that dismissal terminated defendants' 14 CV 173 challenge as *res judicata* and *colateral estopel* applied.

2.

<u>Continuing trespass.</u>

Plaintiff finds new vandalism and destruction whenever she returns to her property, and has seen Wooten at her property on three occasions between 3:00 a.m. and 4:30 a.m. Following one sighting, there was a major water leak from a pipe that had been intentionally disrupted. Frequently, when plaintiff returns to her property, there is other intentional damage. Plaintiff discovered all the electric cords on an outside refrigerator cut when family visited from out of town. A door was torn off another refrigerator at the hinges and left lying in a way that showed it was not wind damage. A heavy dolphin fountain was dismantled three times. The third time, plaintiff just left it in that condition. Plaintiff found a hole in her fence that may have been a route of entry to her gated property. This is not an all inclusive list of vandalism.

Plaintiff's enforcement case was so eviscerated that only the trespass claim remained viable, so she dismissed it without prejudice pending resolution of the jurisdictional issue.

3.

On another occasion, plaintiff came home to find Bernard Wooten on her gated property talking at the door to her young niece from out of town who did not know the situation. Plaintiff called the Sheriff, who caught Wooten leaving the property, and questioned him. Suddenly, Wooten sped away on his 4 wheeler. The Sheriff grabbed the back of the vehicle and held on as he was dragged through the brush till he had to release his grip. Wooten was caught and criminally charged. The charges appear to have been

dropped, but there is a record and plaintiff filed a copy of the charges.

4.

### Defendants intentionally omitted three heirs from their action.

Three other heirs, the daughters of two deceased brothers, were intentionally omitted as heirs when their seven aunts and uncles conspired and perjured themselves in at least two documents in the Telfair County Probate Court by swearing, under oath, that they were the sole heirs to the Jerome Wooten Estate. With that mendacity, they disinherited their three young nieces and stole their birthrights. Two defendants also perjured themselves in sworn Pauper's Affidavits. The public record shows that one owns a property valued at $200,000.00. The other owns a four bedroom trailer, a luxury car and a motorcycle.

5.

### Magistrate Court had jurisdiction, so *res judicata* barred the Superior Court's action.

As cited below, theft and extortion are indeed civil, as well as criminal. In a previous case involving theft from plaintiff, this same Superior Court ratified the Magistrate Court's refusal to issue the arrest warrant plaintiff requested. *Mandamus* would not lie to compel the Magistrate Court to issue the arrest warrant plaintiff requested (12 CV 097). The Georgia Supreme Court affirmed (S12A0494), and a *civil* trial was had for that theft in the Superior Court. The Superior Court contradicted itself by designating theft criminal in this case after previously holding otherwise in the above case. The law appears to shift depending on which side plaintiff is arguing.

4

6.

Opening default contrary to law.

Bernard Wooten had defaulted in both the Magistrate Court case and plaintiff's enforcement action, 14 CV 080, with the excuse of alcoholism. Contradictory to law, the Superior Court opened default in both cases.

7.

Defamation and disparagement of plaintiff by the Clerk of Court in a public record.

While reviewing another record, plaintiff found a yellow *post it* in which the secretary of an opposing counsel lamented that she hoped she had not sent the original to "that idiot'. She had indeed sent an original order for sanctions against plaintiff to plaintiff. Plaintiff forwarded that original to the court, but has no record of receiving any notice for a sanctions hearing. EXHIBIT 1 is evidence of the fact that there are delays in sending information to plaintiff, which prejudices her by shortening her time for response. Plaintiff has been sent orders for cases other than hers, which she returned, and recently received only one page of an order by Judge Wall.

In the same record, plaintiff also found an email in which the Judges' clerk speculated that the attorney, whose secretary had disparaged plaintiff, might dismiss that case after plaintiff documented fraud. The Clerk of Court responded, "That woman is driving us crazy". In a complaint, plaintiff cautioned that the Clerk should not spoliate that evidence. EXHIBIT 2 is a copy of the apology the secretary sent to plaintiff.

8.

Retaliation by Clerk of Court.

No response was made to plaintiff's complaint, but the Clerk retaliated by falsely accusing plaintiff of taking photos of records with a cell phone, though plaintiff does not know how to take a photo with a cell phone, and could not do so because the screen on her flip phone measures a mere 1.5 by 1.25 inches. Examination of the transcription obviously shows that it is a transcription, not a photo. The fonts do not match and plaintiff typed the word "symbol", as there was no font for that symbol.   EXHIBIT 3 is evidence that the Clerk disparately restricted plaintiff's access to public records, and mandated that reviews be done in her office, at her convenience where she could watch plaintiff.  When plaintiff requested to review records on the morning of March 19, the Clerk told her she could not come before 1:00 p.m. because of the Clerk's schedule. Redacted EXHIBIT 4 shows that plaintiff could not come at that time because she had a flight departing from another state on the following day, March 20.

9.

<u>Stereotyping adversely affected the Clerk's performance of her duties.</u>

Plaintiff filed a motion for *mandamus* in the Court of Appeals for orders on all pending motions, as her motions for orders had been ignored by the Superior Court. Presumably because plaintiff physician was perceived as "that idiot", the Clerk assumed she did not know what she was doing and returned the document with a demand for filing fees. Just as she ignored the word "symbol", she ignored *Court of Appeals* at the top of the document. Plaintiff sent it back to the Clerk, who still did not note that the document was the Court's copy of the *mandamus* motion as evidenced in Exhibits 5 and 6.

10.

<u>Counsel's contact with Judge Johnson and the Judges' Clerk.</u>

While sitting at the entrance to the Wheeler County Clerk's office, Attorney Straugh and Judge Johnson walked right past plaintiff, but neither spoke to her. Together, they went to an area behind the circular staircase. Plaintiff included this fact in her affidavit for the Magistrate Court hearing on the *direct attack* the Superior Court had transferred to Magistrate Court. Attorney Straugh indignantly stated that there was innuendo, but did not explain the comment. Plaintiff had merely made a statement of what she actually observed, and Attorney Straughn never denied that fact in court or subsequently.

Whenever plaintiff saw Attorney Straugh at the courthouse for hearings, the Judges' clerk was present with her. Plaintiff did not know for some time that she was the Judges' clerk because she and Attorney Straugh appeared friendlier than would be expected of casual acquaintances.

11.

<u>Fee shifting attorney's fees sanctions generously awarded against plaintiff.</u>

Telfair County is the poorest county in Georgia and the tenth poorest in the United States. In addition to the ruling contradictory to Judge Wall's precedence that theft was civil, discussed *supra* in Paragraph 5, and disregard for appellate authority cited by plaintiff, the Superior Court awarded substantial sanctions against plaintiff for opposing defendants' pleadings and barred her from filing pleadings without prior Court approval. There was no statutory or contractual basis for an attorney's fee award, so the American

Rule was circumvented by fee shifting sanctions. Plaintiff has been heavily sanctioned by the Superior Court in three theft cases in which she was trying to recoup her money, a fact known in the community.

Every defense pleading in this case is a voluminous, redundant tome with several attachments that generated extraordinary billable hours, so the legal expenses are onerous. Telfair County Superior Court functions as a unit with all three judges participating in decisions, including sanctions. Defendants have filed a motion demanding that plaintiff be jailed till she pays the sanctions, though the Court has lost jurisdiction due to *supersedes*. But no action has been initiated against them for their fraud on the Courts and on the three innocent daughters of their two deceased brothers.

12.

### Theft has been a problem for plaintiff since her attempt to enforce a favorable judgment granted her by the late Honorable Judge Anthony Alaimo.

Plaintiff filed 05 CV 421 to enforce a judgment granted to her by the late Judge Anthony Alaimo, one of the most distinguished judges of the Southern District Court. The Federal Courthouse in Brunswick and a Glynn County road are named in his honor. The current Chief Judge, Lisa Godbey Wood, clerked for him. Judge Alaimo's judgment was domesticated in Telfair County by former Chief Judge West on plaintiff's motion.

Defendant Canal Insurance Company did not appear for deposition, but plaintiff, not defendant, had to pay the court reporter and videographer. Plaintiff was sanctioned more than $5,000.00, which she paid. Plaintiff has a copy of the payment as evidence. The Judge, not Judge West, also barred her from any more enforcement action in the Telfair County Superior Court to coup her money, a substantial award including punitive

damages, after a showing of proof. By contrast, the record in the federal case shows that plaintiff's judgment was renewed without restriction (CV304-63). That was the beginning of a series of thefts, including this Magistrate Court case and the *civil* case that met all the elements of criminal statue, O.C.G.A. 16-8-15, "Theft by conversion of payments for property improvements" cited above in Paragraph 5.

13.

## LEGAL ARGUMENT and ANALYSIS

The Telfair County Superior Court lacked authority to open default in both cases.

O.C.G.A. § 9-11-55 (b) provides three means for opening default prior to judgment if four conditions precedent are met. "Compliance with the four conditions is a condition precedent; in its absence, the trial judge has no discretion to open the default." *Grayson a*nd *Hollingsworth Inc. v. C. Heming Studios, Inc.*, 194 Ga. App. 531, 391 S.E. 2d 8. The conditions precedent were not met in either case, so default could not be opened in either case.

14.

These criteria apply prior to judgment. The proper procedure for review after entry of judgment is a writ of certiorari to the state or superior court of the county in which the default judgment was entered (O.C.G.A. 15-10-41). No appeal may be taken from a default judgment in magistrate court. (O.C.G.15-10-41 (b)(2), *Abushmais et al v. Erby,* No. S07G0372. Defendant Bernard Wooten never filed a writ of certiorari for review in the Telfair County Superior Court, another reason why default could not be opened in the initial Magistrate Court Case. The Telfair County Superior Court erred by

opening default, and the *direct attack* was untimely because the three year statute of limitations had run and the case was not brought in the court of rendition as required by O.C.G.A. 9-11-60.

A *collateral attack* was not possible because the Superior Court lacked subject matter jurisdiction due to *res judicata* and *collateral estoppel*. Despite the appellation *collateral attack*, defendants had used *direct attack* procedures in 14 CV 173. Thus, the Telfair County Superior Court never had jurisdiction over the initial Magistrate Court case and its actions against that judgment are void, as a matter of law.

These two consecutive defaults due to alcoholism are inexcusable because defendant Wooten provided no proof of an ADA (Americans with Disabilities Act) disability. The judicial discretion exercised was not supported by authority.

15.

### A *collateral attack* can be brought in any court at any time because the judgment is void, O.C.G.A. 9-11-60 and O.C.G.A. 9-12-16.

Plaintiff has shown that the Magistrate Court did have subject matter jurisdiction, supported by the prior contradictory decision in this same Superior Court discussed in Paragraph 5 above. Non-discriminatory law does not change depending on which side plaintiff is arguing.

"The judgment of a court having no jurisdiction of the person or the subject matter or which is void for any other cause is a mere nullity and may be so held in any court when it becomes material to the interest of the parties to consider it." O.G.C.A. 9-12-16.

*Murphy v. Murphy*, 263 Ga. 280 (1993), 430 S.E.2d 749 is the seminal Georgia case. The Georgia Supreme Court observed that under O.C.G.A. 9-11-60 (a) "a judgment

void on its face may be attacked in any court by any person". Subsection (f) states, "A judgment void because of lack of jurisdiction of the person or subject matter may be attacked at any time." The Supreme Court attempted to reconcile these two sections and noted that subsection (f) "[p]rovides that a judgment void for lack of subject matter or personal jurisdiction may be attacked at any time...". *Murphy* at 282.

16.

Further discussion distinguished *direct attacks*, with a three (3) year statute of limitations, from *collateral attacks* for which there is no statute of limitations, as the judgment is void. *Walker v. Blackwell,* 259 Ga.App. 324, 324, 577 S.E.2d 24 cited *Murphy.*

> "The Supreme Court of Georgia has defined the term 'void on its face', as used in this section to mean 'those judgments which lack either personal or subject matter jurisdiction.' Murphy v. Murphy, 262 Ga. 280, 282, 430 S.E.2d 739 (1993). Therefore, collateral attacks on judgments are limited 'to circumstances where the trial court lacks either subject matter or personal jurisdiction.'" Id at 283, 430 S.E.2d 749. (emphasis added).

17.

<u>The conundrum of subject matter jurisdiction was clarified by the Georgia Supreme Court because of substantial confusion.</u>

In *Abushmais v. Erby,* No. So7Go372 (2007), the Supreme Court stated, "As an initial matter, we note that the term 'subject-matter jurisdiction' has often been loosely used by courts, and as used by *Erby* and the Court of Appeals in framing the issues in this case, has caused substantial confusion." "The phrase 'subject-matter jurisdiction', as defined by this Court, 'refers to subject matter alone,' i,e. 'conferring jurisdiction in specified kinds of cases.'" citation omitted. "'Jurisdiction of the subject-matter does not

11

mean simply jurisdiction of the particular case then occupying the attention of the court, but jurisdiction of the class of cases to which that particular case belongs.'"

18.

<u>Defendants produced no legal authority that theft and extortion are exclusively criminal.</u>

*Wise Moving and Storage, Inc. v. Rieser-Roth,* 259 Ga.App. 832 is a civil case for theft, extortion and fraud. Defendants produced no evidence that *Wise* has been vacated or overturned. Defendants have not produced any authority holding that theft and extortion are only criminal. Theft by conversion is known to be an intentional tort.

19.

<u>The United States Supreme Court held that a potential for bias mandates recusal based on Equal Protection and "fundamental fairness".</u>

Lack of jurisdiction for judicial misconduct has long been recognized. Consternation was caused a few years ago when the United States Supreme Court strongly affirmed this in the landmark case, *Caperton v. A.T. Massey Coal Co., Inc.,* 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009), one of the most important recent cases. *Caperton* applied a Constitutional Fourteenth Amendment Equal Protection analysis to assure "fundamental fairness", and set an objective standard of reasonableness, not subjective intent.

*Caperton* involved potential bias based on a rather large financial contribution to the campaign of a judge who was subsequently involved in a case that involved the contributor. That judge voted in favor of the donor. The Supreme Court ruled that the judge should have recused himself. In the subsequently decided *Williams v. Pennsylvania,* 59 US ___ 2016, the constitutional deprivation was the fact that a

prosecutor not directly involved in the case had signed a single document. Even though there was no evidence that he participated in any of the decisions, that *de minimus* involvement mandated recusal. Plaintiff has a Constitutional right and a statutory right to be treated in accordance with the *Caperton* "fundamental fairness" standard.

20.

Stereotypes can lead to unfortunate consequences.

Presumably because she considered plaintiff physician "that idiot", the Clerk of Court made a serious error in not forwarding the notice of plaintiff's motion for *mandamus* to the judges. Considering plaintiff physician's credentials, the only possible reason for considering her an "idiot" was her African American race and female gender. Race and gender are suspect classes that mandate higher scrutiny. That the Telfair County Court took no action emboldened the Clerk, to her detriment, and caused her to make the serious error of demand a filing fee and returning the Court's copy of plaintiff's motion for *mandamus* to the Court of Appeals to plaintiff (Exhibits 5 and 6).

This Clerk had no legal authority to discriminate against plaintiff by restricting her access to records held solely in trust for the entire public, not just those she approved. The Clerk had a duty to forward signed orders and correspondence to plaintiff immediately, not after a delay that prejudiced plaintiff by shortening her response time, particularly when plaintiff was known to be domiciled in a sister state and was not local. (EXHIBIT 1). The Clerk had no right to disparage plaintiff. It is particularly unconscionable that it was done with the secretary of opposing counsel in a pending case, and in a record that may have been seen by any number of people.

21.

Plaintiff's disparate treatment complaint was ignored.

Canon 3 C (2) of the Code of Judicial Conduct reads,

> "Judges shall require their staffs, court officials and others subject to their direction and control to observe the standards of fidelity and diligence that apply to the judges and to *refrain from manifesting bias or prejudice in the performance of their official duties.*" Emphasis added.

The clerk's misconduct was ignored, though required to be addressed. Litigants have a right to be treated with dignity, not denigration behind the back by a public official, in violation of the oath of office. An investigation should have been conducted and remedial action taken. Because that did not happen, the Clerk's misconduct escalated and adversely impacted her performance of her duties.

22.

The American Rule applies.

Plaintiff has shown a pattern of disparate treatment and disparagement, including contradictory decisions and fee shifting sanctions that reward an attorney for generating substantial billable hours, while sparing clients the cost  This circumvents the American Rule that allows attorney's fees only by statute or contract. As a resident of a sister state, plaintiff is apparently expected to support the local economy by paying attorneys while sparing their clients, xenophobia.

23.

CONCLUSION

Contradiction of its own decisions with this plaintiff in the two different theft cases discussed; decisions contrary to law; abuse of discretion in opening default contrary

14

to Georgia law; disparagement by the Clerk of Court with the secretary of opposing counsel in a pending case; the Clerk's delay in forwarding correspondence to plaintiff; mishandling of plaintiff's pleading by this Clerk, who apparently thinks physician plaintiff is an "idiot", presumably because of her race and gender; interference with plaintiff's ability to prosecute her case by restricting access to public records by the Clerk of Court in retaliation for plaintiff's complaint about her misconduct; no response to Clerk's disparaging, discriminatory, rude, threatening, behavior and retaliation against plaintiff show bias and mandate recusal. Participation by all members of the Court, acting as a unit, makes their actions void under *Caperton* and *Wiliams* in addition to *res judicata* and *colateral estopel.*

Federal question jurisdiction is shown to be met by the evidence presented. Diversity jurisdiction may also be tenable.

BY: _____          Dated: April 2, 2018
    MARGIE McRAE, Plaintiff